IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

**SHANE H.,[1]**

       **Plaintiff,**                                          **Civ. No. 1:22-cv-01651-MC**

       v.                                             **OPINION AND ORDER**

**COMMISSIONER, SOCIAL SECURITY
ADMINISTRATION,**

       **Defendant.**

_____

**MCSHANE, Judge**:

     Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security denying his application for supplemental security disability insurance benefits under Title XVI of the Social Security Act. This Court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3).

     Plaintiff alleges that the Administrative Law Judge ("ALJ") erred by (1) finding unpersuasive the medical opinions of Luc Jasmin, MD, and Ben Moss, PA-C; (2) improperly rejecting Plaintiff's subjective symptom testimony; and (3) improperly rejecting the lay witness testimony provided by Plaintiff's mother. For the reasons explained below, the Commissioner's decision is REVERSED and REMANDED for payment of benefits.

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name of the non-governmental party.

## PROCEDURAL AND FACTUAL BACKGROUND

Plaintiff applied for benefits on August 13, 2019, with an amended alleged onset date of November 26, 2019. Tr. 79. Plaintiff's claim was denied initially and upon reconsideration. Tr. 29. In August 2021, Plaintiff appeared before ALJ Henry, who then found Plaintiff not disabled in a written decision dated August 23, 2021. Tr. 29–40. In August 2022, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision final. Tr. 1–7. Plaintiff now seeks judicial review.

## STANDARD OF REVIEW

The reviewing court shall affirm the Commissioner's decision if the decision is based on proper legal standards and the legal findings are supported by substantial evidence in the record. *See* 42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004); *Ahearn v. Saul*, 988 F.3d 1111, 1115 (9th Cir. 2021). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). To determine whether substantial evidence exists, the court reviews the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion. *Davis v. Heckler*, 868 F.2d 323, 326 (9th Cir. 1989) (citing *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986)). "'If the evidence can reasonably support either affirming or reversing,' the reviewing court 'may not substitute its judgment' for that of the Commissioner." *Gutierrez v. Comm'r of Soc. Sec. Admin.*, 740 F.3d 519, 523 (9th Cir. 2014) (quoting *Reddick v. Chater*, 157 F.3d 715, 720–21 (9th Cir. 1996)).

//

## DISCUSSION

The Social Security Administration utilizes a five-step sequential evaluation to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) (2012). The burden of proof rests on the claimant for steps one through four, and on the Commissioner for step five. *Bustamante v. Massanari*, 262 F.3d 949, 953–54 (9th Cir. 2001) (citing *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999)). At step five, the Commissioner's burden is to demonstrate that the claimant can make an adjustment to other work existing in significant numbers in the national economy after considering the claimant's residual functional capacity ("RFC"), age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If the Commissioner fails to meet this burden, then the claimant is considered disabled. *Id.* If, however, the Commissioner shows that the claimant can perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953–54.

The ALJ found that Plaintiff had the following severe impairments: degenerative disc disease of the cervical and lumbar spine, bilateral shoulder osteoarthritis, and bilateral carpel tunnel syndrome. Tr. 32. The ALJ found that Plaintiff can:

> occasionally lift and carry 20 pounds, frequently lift and carry 10 pounds. He can sit for approximately 6 hours in an 8-hour day, and stand and walk for approximately 6 hours in an 8-hour day. He can frequently use hand controls bilaterally. He can occasionally climb ramps and stairs, but never climb ladders, ropes, or scaffolds. He can occasionally stoop, crouch, kneel, and crawl. He can occasionally reach overhead bilaterally. He can frequently handle, finger and feel bilaterally. He should never work at unprotected heights or around moving and/or dangerous machinery.

Tr. 33. Based on the vocational expert's testimony, the ALJ concluded that Plaintiff could perform jobs existing in significant numbers in the national economy, including cashier II, housekeeper/cleaner, and merchandise marker. Tr. 40. The ALJ therefore determined that Plaintiff was not disabled. *Id.*

## I. Medical Opinions

Plaintiff first argues the ALJ erred in finding unpersuasive the medical opinions of Ben Moss, PA-C, and Luc Jasmin, MD. Pl.'s Br. 6–15. Under the new regulations for evaluating medical opinions, an ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources." 20 C.F.R. § 416.920c(a). Instead, the ALJ must evaluate all medical opinions and prior administrative medical findings for persuasiveness. 20 C.F.R. §§ 404.1520c(a)-(b), 416.920c(a)-(b). In doing so, an ALJ considers the following factors: (1) supportability, as shown by relevant evidence and explanation; (2) consistency with the record as a whole; (3) the relationship between the source and the claimant; (4) specialization; and (5) other factors, including the source's familiarity with other information in the record. 20 C.F.R. § 416.920c(c). Of these, supportability and consistency are the most important and must be articulated in the ALJ's decision. 20 C.F.R. § 416.920c(b)(2). These regulations displace the Ninth Circuit's standard requiring an ALJ to provide "specific and legitimate" reasons for rejecting a treating or examining doctor's opinions. *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022). Now, an ALJ's decision for discrediting any medical opinion "must simply be supported by substantial evidence." *Id*. at 787.

*Ben Moss, PA-C*

Plaintiff first argues the ALJ erred by finding unpersuasive PA Moss's treating source statement. Pl.'s Br. 7. PA Moss began treating Plaintiff in March 2017 and saw him every three to six months. Tr. 847. In an April 2021 statement, PA Moss noted Plaintiff's diagnoses of neuroforaminal stenosis of the cervical spine, paresthesia of the right arm, lumbar radiculopathy, and bilateral carpel tunnel syndrome. *Id*. He opined that Plaintiff could sit for 4 hours, stand/walk

for 4 hours, and lift 20 pounds occasionally and 10 pounds frequently. PA Moss further noted that Plaintiff has no use of his right upper extremity, has limited use of his left upper extremity, and needs to lay down 1-2 times per day for 30-60 minutes. Tr. 847–51. Finally, PA Moss opined that Plaintiff would be off task more than 25% of the day and be absent more than 4 days per month. *Id*. The ALJ found this opinion to be partially persuasive. Tr. 38. The ALJ found that PA Moss's own examination findings were consistent with other parts of the record that state Plaintiff has a "restricted range of motion in the lumbosacral spine, decreased grip strength, and reduced motion in the right shoulder." Tr. 28, citing Tr. 912. However, the ALJ was not persuaded by PA Moss's opinion regarding breaks, lying down, or anticipated absences for Plaintiff. The ALJ reasoned that these more extreme limitations were not supported by PA Moss's own examination findings nor consistent with the record. Tr. 38.

Plaintiff argues the "ALJ did not explain why these findings are alone insufficient to support PA Moss's opinion regarding [Plaintiff]'s need for rest breaks and absences." Pl.'s Br. 7. To demonstrate that PA Moss's opinion is consistent with objective findings in the record, Plaintiff points to evidence showing limited flexion and diminished sensation in Plaintiff's right-hand fingers, wrist pain, weakness in the right arm, left shoulder pain, and tenderness to palpation over the paravertebral muscles of the lower lumbar spine. *See* Pl.'s Br. 8, citing Tr. 684, 493–94, 569–70, 938, 838, 853, 876, 902. However, the ALJ does discuss the objective findings about Plaintiff's postural limitations in his opinion, and ultimately accounted for them in the RFC. Tr. 36, 39. Overall, Plaintiff has not shown that the ALJ's interpretation of PA Moss's opinion was unreasonable. He has simply proposed an alternate reading of that opinion. "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d at 947,

954 (9th Cir. 2002) (citing *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999)). The ALJ reasonably interpreted PA Moss's opinion by finding that it was not fully supported by his own examination findings, nor consistent with the entirety of the record. The ALJ cited to several instances in the record that show good physical examination findings, adequate relief of pain with medication, and improvement in functionality. Tr. 38, citing Tr. 492, 623, 875–76, 882. Plaintiff has thus failed to show that the ALJ harmfully erred in evaluating PA Moss's opinions. *See Ludwig*, 681 F.3d at 1054; *Thomas*, 278 F.3d at 954.

*Luc Jasmin, MD*

Plaintiff next argues the ALJ erred in his evaluation of Dr. Jasmin's medical opinion. In March 2018, Dr. Jasmin completed an assessment of Plaintiff's physical limitations to assess his vocational abilities. Tr. 466–71. Dr. Jasmin found that Plaintiff's physical abilities were limited, as "[h]e has persistent right arm weakness (proximal and distal) and reports that the strength in his right hand has not increased since the surgery. He also has persistent numbness of the 3rd finger." Tr. 467. Dr. Jasmin opined that Plaintiff's symptoms are "due to a combination of previous cervi[c]al spine injury and [p]eripheral neuropathy." *Id*. Dr. Jasmin reiterated Plaintiff's own reports "that he has to lay down at least 5 times a day for 15-20 minutes eac[h]." *Id*.

The ALJ gave Dr. Jasmin's opinion little weight for three reasons. He found that Dr. Jasmin failed to cite any findings in support of his opinion, and that his observations did not support the full extent of his opinion. Next, the ALJ gave the opinion less weight because Dr. Jasmin's limitations were not consistent with the objective medical evidence of record. *Id*. Finally, he gave less weight to the opinion because it predated Plaintiff's onset date. *Id*.

The ALJ's assessment here is also free of harmful error. In evaluating Dr. Jasmin's opinion, the ALJ addressed both supportability and consistency and his finding is supported by substantial evidence.

First, the ALJ acknowledged that Dr. Jasmin's observations support "some limitations in manipulation with the right upper extremity" but do not support a "5[-]pound lift limit, nor the sitting, standing, or walking limitations, the need to take breaks, or the estimated absences." Tr. 38. The ALJ found that Dr. Jasmin's opinion failed to cite any evidence to support these more extreme limitations.

Next, the ALJ found Dr. Jasmin's opinion that Plaintiff needs rest, breaks, and absences to be inconsistent with Plaintiff's 2018 physical therapy discharge summary stating that Plaintiff was able to participate in "daily activities without major exacerbations," and was encouraged to "increase his outdoor activities as his is able to improve his overall well[-]being." Tr. 38, citing Tr. 697. The ALJ also found Dr. Jasmin's opinion to be inconsistent with Plaintiff's pain management records in July 2019, which state "patient appears to be obtaining adequate relief and improvement in ability to function." Tr. 28, citing Tr. 623, 753; *see also* Tr. 764, 827, 444, 459, 613. Dr. Jasmin relied on Plaintiff's own subjective reports that he must lie down or rest periodically, which the ALJ found was not supported by Dr. Jasmin's own observations. Tr. 38.

Finally, the ALJ correctly rejected Dr. Jasmin's opinion because it was rendered before Plaintiff's onset-date and did not specifically identify Plaintiff's maximum capabilities during the relevant period. In evaluating medical opinions, an ALJ may consider the timing, level of explanation, and supportability of the opinions. *See* 20 C.F.R. § 404.1527(c)(3), (4), (6). Although an ALJ must consider medical opinions rendered outside the time period at issue, they still may reduce the weight given to those opinions. *See Ahearn,* 988 F.3d 1111; *see also*

*Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008). It was appropriate for the ALJ to consider Dr. Jasmin's opinion but reduce its weight because it was rendered before the relevant period.

## II. Subjective Symptom Testimony

Plaintiff contends the ALJ erred by discounting his subjective statements about the limiting effects of his symptoms including chronic pain, radiculopathy, numbness, weakness, and tingling in his upper extremities. When assessing a claimant's subjective symptom testimony, an ALJ performs a two-stage analysis. *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017); 20 C.F.R. § 416.929. First, the claimant must produce objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. *Treichler v. Comm'r Soc. Sec. Admin.*, 775 F.3d 1090; 1102 (9th Cir. 2014); *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). Second, absent affirmative evidence that the claimant is malingering, the ALJ must provide specific, clear and convincing reasons for discounting the claimant's testimony regarding the severity of the symptoms. *Trevizo*, 871 F.3d at 678; *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). The ALJ must make findings that are sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015). The Ninth Circuit demands more than a summary of the medical evidence and generic, high-level reasons why a claimant's allegations conflict with that evidence. *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020). The Ninth Circuit "requires the ALJ to specifically identify the testimony she or he finds not to be credible and . . . explain what evidence undermines that testimony." *Id.*; *Brown-Hunter*, 806 F.3d at 494.

Clear and convincing reasons for rejecting a claimant's testimony "include conflicting medical evidence, effective medical treatment, medical noncompliance, inconsistencies in the claimant's testimony or between her testimony and her conduct, daily activities inconsistent with the alleged symptoms, and testimony from physicians and third parties about the nature, severity and effect of the symptoms" about which the claimant complains. *Bowers v. Astrue*, No. 11-cv-583-SI, 2012 U.S. Dist. LEXIS 87424, 2012 WL 2401642, at *9 (D. Or. June 25, 2012) (citing *Tommasetti*, 533 F.3d at 1040); *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2013). In some circumstances, an ALJ may reject subjective complaints where the claimant's "statements at her hearing do not comport with objective medical evidence in her medical record." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009). However, especially in the mental health context, an ALJ may not cherry-pick isolated instances of favorable psychological symptoms when the record as a whole reflects long-standing psychological disability. *See Ghanim*, 763 F.3d at 1164; *see also Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014). Moreover, a lack of objective evidence may not be the sole basis for rejecting a claimant's subjective complaints. *See Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001).

Plaintiff's primary complaints are his residual pain, radiculopathy, and numbness related to a prior motor vehicle accident. Tr. 89–91. At the hearing, Plaintiff testified that the areas with the most pain are his back, neck and right shoulder. Tr. 90. Plaintiff reported that he continues to experience pain and numbness in his left side and right hand, with his right hand being numb completely and unusable. *Id*. He testified the pain in his back is concentrated in his lumbar spine at the 5-6 level, and that because his right hand is numb, all the pain is concentrated in his right shoulder and neck. *Id*. Additionally, he stated that he lays down the majority of the day and that standing "puts an enormous strain on [his] lower back." Tr. 92. Plaintiff further stated that he

wears two back braces and uses a cane to get around. Tr. 92. In his function report, Plaintiff indicated that he can only sleep for 20 minutes at a time, and only has his left hand available to do any household tasks. Tr. 357–58. Plaintiff also stated that he cannot walk more than one-fourth of a mile and must rest 15-30 minutes after attempting to do so. Tr. 361. Plaintiff asserts that his symptoms have not improved with treatment and that he cannot function under his current medication regimen. Pl.'s Br. 9.

The ALJ determined that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [his] symptoms are not entirely consistent with the medical evidence and other evidence in the record." Tr. 34. The ALJ discounted Plaintiff's subjective complaints because he reported improvement with treatment and because Plaintiff's testimony conflicted with his activities of daily living (ADLs) and the objective medical evidence in the record. Tr. 34-36. The Court disagrees.

In discounting Plaintiff's testimony, the ALJ cited to Plaintiff's pain management specialists who noted "adequate relief of pain with medications, as well as improvement in the [Plaintiff]'s ability to function." Tr. 36, citing Tr. 623. The record shows Plaintiff was prescribed medication, including tramadol, Ibuprofen and amitriptyline to treat his symptoms, with several instances in the record supporting symptom improvement with these medications. *See* Tr. 653, 668, 687, 699, 764. Plaintiff argues that more recently, "[he] was obtaining inadequate relief of pain and inability to function with his current medication regimen." Tr. 24, 774, 780, 830. Although the ALJ mentions "recent records noted [Plaintiff] was independent in the home and community," the ALJ failed to address the recent records showing Plaintiff was obtaining "inadequate relief of pain and ability to function" on his current medication regimen and that his providers had to increase his dose of tramadol because of it. Tr. 36, 24, 774, 780, 830, 964. This

was clear error in the ALJ's analysis. In weighing and evaluating the evidence, the ALJ must consider the entire case record, including each medical opinion in the record, together with the rest of the relevant evidence. 20 C.F.R. § 416.927(b); *see also Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). The ALJ failed to do so here.

The ALJ found that Plaintiff's ability to care for his pets, heat food up in the microwave, do household chores, and drive undercut his allegations of completely disabling impairments. Tr. 34. However, the ALJ failed to provide any further explanation. Tr. 34. An ALJ may reject symptom allegations that are inconsistent with a claimant's ability to perform normal ADLs. *See* 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i). There are two ways ADLs may support such rejection: (1) the ADLs contravene the claimant's allegations of functional limitations; or (2) the ADLs "meet the threshold for transferrable work skills[.]" *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). Neither of these conditions have been met. Neither the ALJ nor the Commissioner explain how these minimal activities of daily living, especially as actually performed by Plaintiff, contradict his subjective symptom testimony.

Finally, the ALJ found that Plaintiff's subjective symptom testimony was not supported by the medical record. The ALJ cited to nerve conduction tests showing that Plaintiff's right upper extremity had "no evidence of right median mononeuropathy, peripheral neuropathy, ulnar neuropathy, myopathy, nor evidence of cervical radiculopathy or brachial plexopathy." Tr. 35, citing Tr. 479. The ALJ considered Plaintiff's October 2019 neurosurgical evaluation that stated, "the findings identified on the cervical MRI could not explain the [Plaintiff]'s arm weakness and numbness symptoms, and generally noted that the [Plaintiff]'s symptoms did not correlate with either the MRI findings or the [Plaintiff]'s pathology." Tr. 35, citing Tr. 570-71, 573. Finally, the ALJ cited evidence to discount Plaintiff's claims of debilitating back and shoulder pain.

However, inconsistency with the medical evidence alone is not a clear and convincing reason to reject symptom testimony. *Trevizo v. Berryhill*, 871 F.3d 664, 679 (9th Cir. 2017). Because the Court finds the ALJ's other reasons were not clear and convincing, the ALJ erred by rejecting Plaintiff's subjective symptom testimony.

### III. Lay Witness Testimony

"In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work." *Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006). Lay witness testimony regarding a claimant's symptoms or how an impairment affects his ability to work is competent evidence. *Id*. Thus, an ALJ may not reject such testimony without comment. *Id*. In rejecting lay testimony, the ALJ need not "discuss every witness's testimony on an individualized, witness-by-witness basis. Rather, if the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness." *Molina*, 674 F.3d at 1114. However, "a lack of support from the 'overall medical evidence' is not a proper basis for disregarding [lay witness] observations. The fact that lay testimony and third-party function reports may offer a different perspective than medical records alone is precisely why such evidence is valuable at a hearing." *Diedrich v. Berryhill*, 874 F.3d 634, 640 (9th Cir. 2017) (citations omitted) (citing cases and concluding: "A lack of support from medical records is not a germane reason to give 'little weight' to those observations.")

An ALJ errs by failing to "explain her reasons for disregarding . . . lay witness testimony, either individually or in the aggregate." *Molina*, 674 F.3d at 1115 (quoting *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996)). Such an error may be harmless, and a court must determine whether the error is "'inconsequential to the ultimate nondisability determination' in

the context of the record as a whole." *Id*. at 1122 (quoting *Carmickle*, 533 F.3d at 1162-63). The error is harmless, for example, "[w]here lay witness testimony does not describe any limitations not already described by the claimant, and the ALJ's well-supported reasons for rejecting the claimant's testimony apply equally well to the lay witness testimony." *Id*. at 1117. When an ALJ ignores uncontradicted lay witness testimony that is highly probative of a claimant's condition, "a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Stout*, 454 F.3d at 1056.

The Commissioner argues that under the new regulations governing the evaluation of medical evidence, an ALJ need not provide any reason for rejecting lay witness statements. Subsection (d) of the new regulations provides: "We are not required to articulate how we considered evidence from nonmedical sources using the requirements in paragraphs (a)-(c) in this section." 20 C.F.R. § 404.1520c(d). Subsections (a) through (c) lay out the new standards for evaluating medical opinion evidence. *Id*. § 404.1520c(a)-(c). Thus, under the new regulations, the ALJ is not required to use the standards for evaluating medical opinion evidence when evaluating lay witness testimony.

The Ninth Circuit has not yet addressed whether the new regulations affect the requirement in the Ninth Circuit that an ALJ must give germane reasons for rejecting lay witness testimony. Some courts have suggested that the new regulations may remove the ALJ's obligation to address lay testimony altogether, including any obligation to articulate germane reasons for disregarding lay testimony. *See e.g.*, *Gretchen S. v. Saul*, 2020 U.S. Dist. LEXIS 191270, 2020 WL 6076265, at *8 (D. Or. Oct. 15, 2020) ("[T]here is an argument that the ALJ is no longer required to provide 'arguably germane reasons' for disregarding such statements, as

the Ninth Circuit has traditionally required."). On the Court's reading, however, the new regulations do not do away with the ALJ's obligation to address lay witness testimony altogether. Instead, it only clarifies that the ALJ does not need to use the new standards for evaluating medical opinion evidence when evaluating non-medical source lay testimony. *See* 20 C.F.R. § 404.1520c(d). Because there are no provisions of the new regulations that unambiguously remove the ALJ's obligation to address lay witness testimony, it follows that the ALJ must continue to give germane reasons for discounting lay witness testimony. *See, e.g., Julie J. v. Comm'r, Soc. Sec. Admin.*, 2023 WL 3002388, at *7 (D. Or. Apr. 18, 2023). Further, courts have continued to conclude under the new regulations that an ALJ's failure to address lay testimony is error. *See e.g., Paulette N. v. Saul*, 2021 U.S. Dist. LEXIS 203363, 2021 WL 4902421, at *10 (N.D. Cal. Oct. 21, 2021) (stating that the ALJ's failure to discuss the plaintiff's daughter's testimony was harmful error); *Christopher C. v. Kijakazi*, 2021 U.S. Dist. LEXIS 169053, 2021 WL 4061557, at *8 (D. Or. Sept. 7, 2021) (stating that the ALJ's failure to address the plaintiff's father's testimony was harmful error); *Kay J. v. Comm'r of Soc. Sec.*, 2021 U.S. Dist. LEXIS 172075, 2021 WL 4087833, at *3 (W.D. Wash. July 7, 2021) ("The Court agrees the ALJ erred by failing to address the lay witness testimony.")

Plaintiff argues that the ALJ erred by rejecting the testimony of Plaintiff's mother, Rhonda H. Pl.'s Br. 19. The Commissioner argues that any error the ALJ committed in failing to address Rhonda's letter was harmless because her testimony identified no limitation not already accounted for in Plaintiff's testimony and the Court can therefore discount Rhonda's testimony for the same reasons the ALJ rejected Plaintiff's testimony. Def.'s Br. 15. The ALJ "considered" Rhonda's letter in his opinion, but completely failed to provide any reasoning for the Court to evaluate how he did so. The ALJ solely relied on his citation to 20 C.F.R. § 416.920(b)c to

discount the letter, stating "further articulation of the persuasiveness of this statement is not required." Tr. 37. Without more, this is not a sufficient basis to discount that testimony. Further, because the ALJ erred in evaluating Plaintiff's own testimony, it cannot be said that the ALJ's error here was harmless.

## IV. Remedy

While the ALJ reasonably assessed the medical opinion evidence, the ALJ erred by discounting Plaintiff's subjective symptom testimony and the lay witness testimony of Plaintiff's mother. These errors were not harmless because they were not "inconsequential" to the ultimate disability determination. *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006).

Because the ALJ erred, the question is whether to remand for further administrative proceedings or an award of benefits. Generally, "when an ALJ's denial of benefits is not supported by the record, 'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" *Hill v. Astrue*, 698 F.3d 1153, 1162 (9th Cir. 2012), quoting *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004). However, an award of benefits can be directed "where the record has been fully developed and where further administrative proceedings would serve no useful purpose." *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996). Remand for calculation of benefits is only appropriate where the credit-as-true standard has been satisfied, which requires:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

*Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014).

This is a rare instance where remand for an award of benefits is appropriate. Here, Plaintiff satisfies all three requirements. The record is fully developed and there are no

ambiguities that further administrative proceedings need resolve. As explained above, the ALJ failed to provide sufficient reasons for discounting Plaintiff's subjective symptom testimony. Credited as true, Plaintiff's testimony combined with the vocational expert's testimony establish that Plaintiff is disabled under the Act. Plaintiff testified that he lies down for the majority of the day. Tr. 90. He testified that if he were to attempt to do something more demanding, such as work, he would be bedridden for 2-3 days afterward. Tr. 94. The vocational expert testified that an employee who needed to lie down one to two times a day for half an hour to an hour would be unable to maintain competitive employment. Tr. 101. Moreover, consideration of the record as a whole convinces the Court that Plaintiff is disabled. The Court sees no purpose for further proceedings.

## **CONCLUSION**

For these reasons, the Commissioner's final decision is REVERSED and this case is remanded for award of benefits.

IT IS SO ORDERED.

DATED this 14th day of July, 2025.

/s/ Michael McShane
Michael J. McShane
United States District Judge